IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARK RENFRO, § | |
| Plaintiff, § | |
| v. § | No. 3:09-CV-02400-M-BH |
| § | |
| MICHAEL ASTRUE, Commissioner of § | |
| the Social Security Administration, § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment* and *Plaintiff's Brief in Support of Motion for Summary Judgment* ("Pl. Br."), filed May 20, 2010; *Commissioner's Cross-Motion for Summary Judgment* and *Defendant's Memorandum in Support of Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment*, filed June 18, 2010. Based on the relevant filings, evidence, and applicable law, *Plaintiff's Motion for Summary Judgment* should be **DENIED** and the *Commissioner's Cross-Motion for Summary Judgment* should be **GRANTED**.

**I. BACKGROUND[1]**

*A. Procedural History*

Mark Renfro ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). *See* 42 U.S.C. § 405(g). On February 26, 2008, Plaintiff filed

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

applications for disability insurance benefits and supplemental security income, alleging disability since October 27, 2007. (Tr. at 136, 143.) Plaintiff claimed he was disabled due to lower back pain, depression, and substance abuse. (Tr. at 187.) The Commissioner denied his applications initially and upon reconsideration.[2] (Tr. at 79-98.) Pursuant to Plaintiff's request, an administrative hearing was conducted on April 6, 2009. (Tr. at 1-33). The Plaintiff, two medical experts, and a vocational expert testified at the hearing. *Id.* On June 9, 2009, the ALJ issued a decision finding Plaintiff not disabled. (Tr. at 69-77.) On September 4, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. at 61-63.) Accordingly, the ALJ's June 9, 2009 decision became the Commissioner's final administrative decision for purposes of judicial review. Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on December 16, 2009.

### B.    *Factual History*

#### 1.    Age, Education, and Work Experience

Plaintiff was born on July 21, 1950. (Tr. at 136.) At the time of the hearing, he was 58 years old. (Tr. at 5.) He had a high school education, and his relevant past work included jobs as a cashier and machine operator. (Tr. at 7, 9-12.) Plaintiff worked from 1987-1994, from 1994-1996, and sporadically in 2000 and 2006. (Tr. at 9-12.)

#### 2.    Medical Evidence

On February 25, 2008, Gurjeet S. Kalra, M.D., performed a psychiatric evaluation on Plaintiff. (Tr. at 234-37.) Disability Determination Services referred Plaintiff to Dr. Kalra because of his allegations of depression and history of drug addiction. (Tr. at 235.) Plaintiff told Dr. Kalra

---

[2] Plaintiff was also denied benefits at a prior hearing on October 17, 2007. (Tr. at 34-60, 182-83.)

that he had been hospitalized for depression and a series of suicide attempts. *Id.* He had abused illegal drugs and alcohol, was imprisoned for cocaine possession in 1994, and received drug rehabilitation services. *Id*. He also had a back injury and chronic back pain. (Tr. at 236.)

Upon evaluation, Dr. Kalra found Plaintiff to be adequately dressed but poorly groomed. *Id*. He was alert and oriented and had a depressed and anxious mood. *Id*. Plaintiff denied current suicidal or homicidal thoughts, intent, or plans. *Id*. Dr. Kalra found Plaintiff's memory fair, concentration slightly impaired, intelligence normal, insight limited, and judgment impaired. *Id*. He diagnosed Plaintiff with moderate major depression, cocaine abuse, and a history of polysubstance and alcohol abuse. (Tr. at 237). A global assessment of functioning (GAF) score of 45-50 was assigned to Plaintiff.[3] *Id*. Dr. Kalra concluded that Plaintiff's prognosis was guarded, and that he would benefit from aggressive treatment for depression. *Id*.

On March 24, 2008, Plaintiff underwent a consultative internal medicine examination by M.A. Zeb, M.D. (Tr. at 238-40.) Plaintiff reported that he sustained a back injury in 1987, and that he had since experienced sporadic back pain radiating down his legs. (Tr. at 238.) He stated that pain was a 3 on a 1-10 scale, it got worse when he bent over, and it was about a 9 when he walked. (Tr. at 238-39.) A physical examination revealed that his systems were normal and that he had no edema, clubbing, or cyanosis in his extremities. (Tr. at 238.) Dr. Zeb commented that Plaintiff had no sensory or reflex abnormalities, and his range of motion was normal. *Id*.

Additionally, Plaintiff's heel and toe walking, squatting, and hopping was normal, but he had difficulty doing tandem walking. (Tr. at 239.) Plaintiff had normal strength and ability to reach,

---

[3] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed., text revision 2000).

3

handle, finger, and feel. *Id.* Dr. Zeb found that Plaintiff had no tenderness to palpation, and a straight leg raising test revealed a slight pull in his lower back at about 70 degrees. *Id.* Dr. Zeb concluded that Plaintiff could sit for 10 hours, stand for 15 minutes, move around for 15 minutes, lift 10 pounds, carry 10 pounds, handle objects, hear, and speak "okay." (Tr. at 238.) Three x-ray views of Plaintiff's lumbar spine showed evidence compatible with mild degenerative disc disease ("DDD") at the L5/S1 level. (Tr. at 240.) Plaintiff otherwise had a normal lumbar spine. *Id.*

On April 4, 2008, State agency physician Charles Lankford, Ph.D. reviewed Plaintiff's medical evidence and completed a psychiatric review form. (Tr. at 241-58.) Plaintiff had moderate major depressive disorder ("MDD") and a history of polysubstance abuse. (Tr. at 244, 249.) Dr. Lankford found Plaintiff had mild restrictions on daily living activities, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 251.)

Dr. Lankford also conducted a mental residual functional capacity ("RFC") assessment. (Tr. at 255.) Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, and in his ability to get along with co-workers or peers. (Tr. at 255-56.) He was also moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 256.) Dr. Lankford ultimately determined that Plaintiff could understand, remember, and carry out detailed but not complex instructions, make decisions, maintain attention and concentrate for extended periods, interact adequately with coworkers, supervisors, and the general public, and respond appropriately to changes in the work setting. (Tr. at 255-57.) Overall, Dr. Lankford found that Plaintiff's ability to sustain work was

4

somewhat limited, but the impact of his symptoms did not wholly compromise his ability to independently initiate, sustain, or complete activities. (Tr. at 253.)

On April 8, 2008, a non-examining state agency physician, Yvonne Post, D.O., made a physical RFC assessment. (Tr. at 259-66.) Dr. Post determined that Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk for about 6 hours in an 8 hour workday, and sit for about 6 hours in an 8 hour workday. (Tr. at 260.) He also had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. at 261-63.) Dr. Post concluded that Plaintiff's alleged limitations were not wholly supported by the evidence in his file, and his limitations did not wholly compromise his ability to independently initiate, sustain, or complete activities. (Tr. at 264, 266.)

On December 30, 2008 Plaintiff was presented to Lakes Regional MHMR Center for mental health treatment. (Tr. at 356-67.) Medical staff diagnosed Plaintiff with major depressive disorder ("MDD") and cocaine abuse, and they assigned Plaintiff a GAF score of 42. (Tr. at 362.)

### 3. Hearing Testimony

A hearing was held before the ALJ on April 6, 2009. (Tr. at 3.) Plaintiff appeared personally and was represented by an attorney. *Id.* Plaintiff testified that he was 58 years old and had graduated from high school. (Tr. at 5, 7.) His past relevant work included positions as a cashier and machine operator. (Tr. at 9-12.)

#### a. Plaintiff's Testimony

Plaintiff testified that he lived in his mother's house with his mother, brother, and brother's girlfriend. (Tr. at 6.) Plaintiff occasionally vacuumed, did yard work, and drove his mother to the grocery store. (Tr. at 6-7, 15.) He attended church on Sunday mornings and Narcotics Anonymous

5

up to three times per week. (Tr. at 15-16.)

Plaintiff claimed that he was unable to work because of his back and his depression. (Tr. at 8.) He had injured his back twenty years before while working at Fiberite. (Tr. at 7.) He did not have back surgery or take any medication for his pain. (Tr. at 13.) His lower back pain could flare up to an 8 on a scale of 1-10 and radiated down his hips and legs, but it had only flared up three times in the previous year. (Tr. at 13-15.) As for his physical limitations, Plaintiff could comfortably lift less than 10 pounds, stand for 10 minutes, walk approximately 2 blocks, and he had no problem sitting. (Tr. at 17-19.)

Plaintiff had held jobs as a cashier and a machine operator in the last 15 years. (Tr. at 9-11.) As cashier, he didn't lift anything weighing more than 10 pounds. (Tr. at 10.) As a "film coder" machine operator, he sat at a desk and pushed buttons and didn't lift anything heavier than 10 pounds. (Tr. at 11.)

Plaintiff testified that he had been treated by several doctors for major depression. (Tr. at 19-21.) He also regularly used rock cocaine from 1992-1994 and occasionally used rock cocaine from 2002-2008. (Tr. at 24-26.) Plaintiff was arrested and incarcerated in 1994 and 2008 for cocaine possession, and he participated in several drug treatment programs. (Tr. at 25-27.)

      b. <u>Medical Expert Testimony</u>

Medical expert ("ME") Dr. Billinghurst reviewed Plaintiff's medical records and testified as to his physical impairments. (Tr. at 22-24.) He testified that Dr. Zeb's limited RFC recommendation–that Plaintiff could only lift 10 pounds, stand 15 minutes, move around for 15 minutes, and sit for 10 hours–was not supported by his physical exam. (Tr. at 23.) ME Billinghurst concluded that none of Plaintiff's medical impairments met or equaled a Listed Impairment. *Id.* He

6

opined that Plaintiff could lift at least 20 pounds occasionally and 10 pounds frequently, and that he could stand, walk, and sit for an unlimited amount of time. (Tr. at 24.)

Medical expert Dr. Smith reviewed Plaintiff's medical records and testified as to his mental impairments. (Tr. at 28-31.) ME Smith stated that Plaintiff's file was "pretty consistent" with his testimony and history of cocaine use and mood problems. (Tr. at 30.) He concluded that none of Plaintiff's medical impairments met or equaled a Listed Impairment. *Id*. ME Smith's psychiatric review revealed that an RFC would be necessary under Listings 12.04, 12.06, and 12.09.[4] *Id*. He ultimately concluded Plaintiff had only mild restrictions of daily activities and social functioning, moderate restrictions in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 31.) ME Smith testified that Plaintiff's only mental workplace limitation should be no complex tasks. *Id*.

      c. Vocational Expert Testimony

Vocational expert ("VE") Mr. Bowden reviewed Plaintiff's work history and testimony and explained that Plaintiff's cashier job was semi-skilled and sedentary with a specific vocational preparation ("SVP") level of 3.[5] (Tr. at 31-32.) Plaintiff's job as a machine operator was an unskilled sedentary position with an SVP of 2. (Tr. at 32.)

The ALJ asked the VE whether Plaintiff could perform any of his prior work assuming the following functional limitations: lifting 10 pounds regularly, 20 pounds occasionally; standing 6

---

[4] 12.04 Affective Disorders - based on indications of depressive syndrome, appetite disturbance, sleep disturbance, feelings of guilt and worthlessness, and suicidal thoughts; 12.06 Anxiety Disorders; 12.09 Substance Addiction Disorders.

[5] The SVP findings were based on *The Occupational Outlook Handbook* and *The Dictionary of Occupational Titles*. (Tr. at 32-33.) An SVP rating of 1-2 corresponds to unskilled work. SVP rating of 3-4 corresponds to semi-skilled work. SVP rating of 5-9 corresponds to skilled work. *See* SSR 00-4p.

hours of an 8 hour day; sitting 6 hours of an 8 hour day; no ropes, ladders, or scaffolds; no working at heights; no working in constant contact with vibrating machinery; and no complex tasks. *Id.* The VE responded affirmatively; SVPs of 3 or 4 correlate with the ability to do detailed work, but do not require complex activities, so the cashier position and the machine operator position would meet the Plaintiff's RFC. *Id.*

*C.     ALJ's Findings*

The ALJ denied Plaintiff's applications for disability insurance benefits and supplemental security income in a written opinion issued on June 9, 2009. (Tr. at 69-77.) Plaintiff met the insured status requirements, had not engaged in substantial gainful activity since the alleged onset of disability, and had the following severe impairments: back injury, degenerative disc disease ("DDD"), depression, anxiety, and drug abuse. (Tr. at 71.) However, the ALJ concluded that Plaintiff's impairments did not, singly or in combination, meet or medically equal one of the Listed Impairments. *Id.*

Plaintiff's physical impairments did not satisfy Listing 1.04 (disorders of the spine) because there was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis and other needed symptoms. (Tr. at 71-72.) With regard to mental impairments, the ALJ considered Listings 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.09 (substance addiction disorders), but concluded that Plaintiff's mental impairments did not cause marked limitations, and thus, "paragraph B" criteria was not satisfied.[6] (Tr. at 72.) He opined that Plaintiff only had mild restrictions of daily living activities and social functioning, moderate difficulties in maintaining

---

[6] To satisfy "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. (Tr. at 72.)

8

concentration, persistence, or pace, and no episodes of decompensation. *Id.*

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the treatment notes and RFC assessment. (Tr. at 76.) Specifically, Plaintiff had no tenderness to palpation, full range of motion, normal straight leg raising, and x-rays showed mild DDD at L5/S1 level. *Id.* The ALJ concluded that Plaintiff had the RFC to perform light work limited by no complex instructions, no climbing of ropes/ladders/scaffolds, no working at heights, no contact with vibrating machinery, and occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 72.)

Additionally, based on the VE's testimony, the ALJ determined that Plaintiff was able to perform past relevant work as a cashier and machine operator. (Tr. at 76.) Plaintiff's work did not require the performance of work-related activities precluded by his RFC. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 77.)

## II. ANALYSIS

*A.    Legal Standards*

### 1.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In

applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

### 2. **Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not

> be found disabled regardless of medical findings.
>
> 2. An individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### B. *Issues for Review*

Plaintiff presents the following issues for review:

(1) The ALJ failed to properly evaluate the opinion of Consulting Physician, M.A. Zeb;

(2) The ALJ failed to properly evaluate the opinion of the State Agency Medical

>           Examiner, Charles Lankford, Ph.D;
>
> (3)     The ALJ failed to provide the required comparison between the demands of Plaintiff's past relevant work and Plaintiff's physical and mental RFC.

(Pl. Br. at 1).

## C.     *Issue One: Opinion of Consulting Physician M.A. Zeb*

Plaintiff asserts that in forming his RFC assessment, the ALJ failed to give Dr. Zeb's consultative examination report the proper evidentiary weight under 20 C.F.R. § 404.1527(d). (Pl. Br. at 5-13.) He claims the ALJ rejected, without explanation, Dr. Zeb's medical source statements that Plaintiff had the RFC to only perform a limited range of sedentary work. *Id*.

Medical source statements are medical opinions submitted by acceptable medical sources, including consultative examiners, about an individual's ability to perform work-related activities despite physical or mental impairments. SSR 96-5p. An ALJ is required to consider all of the evidence in the record and set forth the weight given to every medical opinion received. *See* 20 C.F.R. § 404.1527(c) & (d); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

Medical source statements made by "treating sources" may be entitled to special significance and controlling weight. *Id*. A "treating source" is the plaintiff's own physician who provided him with medical treatment or evaluation and had an "ongoing treatment relationship" with him. *See* 20 C.F.R. § 404.1502. A treatment relationship is generally considered "ongoing" when the medical evidence establishes that the plaintiff saw the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition[ ]." *Id.* The regulations distinguish infrequent but medically appropriate treatment from situations in

which the "relationship with the [physician] is not based on . . . medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [a] claim for disability." *Id*. If controlling weight is not given to a treating source's opinion, the Commissioner must consider six factors in deciding the weight to be given to each medical opinion. 20 C.F.R. § 404.1527(d)(1)-(6).[7] While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton*, 209 F.3d at 455. He retains the sole responsibility for evaluating a plaintiff's RFC based on the record as a whole, *see Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990), and "is free to reject the opinion of any physician when the evidence supports a contrary conclusion", *Martinez v. Chater*, 64 F.3d 172,176 (5th Cir. 1995) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

Here, Plaintiff concedes that there was "no ongoing treatment relationship" with Dr. Zeb. (Pl. Br. at 10.) He was referred to Dr. Zeb for a one-time consultative examination, and his x-rays were plainly conducted for a disability determination. (Tr. at 238-40.) His relationship with Dr. Zeb was "not based on . . . medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [a] claim for disability." 20 C.F.R. § 404.1502. Because Dr. Zeb was not a treating physician, no controlling weight was required to be given to his medical opinions.[8] (Pl. Br. at 10.)

---

[7] These factors are (1) whether the source examined the claimant; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(1)-(6). They apply "only with respect to medical opinions of treating physicians." *Villalpando v. Astrue*, 320 F. App'x 208, 211 (5th Cir. 2009).

[8] *Gittens v. Astrue* and *Price v. Astrue* do not apply in this case because those cases involved properly weighing the medical opinions of *treating* physicians. *Price v. Astrue*, 572 F. Supp.2d 703, 710-12 (N.D. Tex. 2008); *Gittens v. Astrue*, No. 3:04-CV-2363-L, 2008 WL 631215, at *3 -5 (N.D. Tex. Feb. 29, 2008); (Pl. Br. at 7-8.)

Additionally, the ALJ's opinion in this case reflects "careful consideration to the entire record," including Dr. Zeb's opinions, in formulating the RFC assessment. (Tr. at 72-76.) He specifically relied on Dr. Zeb's findings that Plaintiff's physical examination revealed no edema, clubbing, or cyanosis, no sensory or reflex abnormalities, and normal walking, squatting, hopping, and range of motion. (Tr. at 74.) He also acknowledged Dr. Zeb's determinations of Plaintiff's physical limitations–that he probably suffered from mild DDD at the L5/S1 level, but had an otherwise normal lumbar spine. (Tr. at 74-76.) However, the ALJ explained that given the total weight of the medical evidence, Plaintiff retained the RFC to perform a limited range of light work. (Tr. at 72-76.) Specifically, Plaintiff could perform light work limited by no complex instructions, no climbing or ropes, ladders, or scaffolds, no work at heights, no work or contact with vibrating machinery, and occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 72.)

The ALJ's opinion reflects that he made his RFC determination based on a consideration of the medical opinions and entire case record as required by SSR 96-5p. He properly considered Dr. Zeb's medical opinions and reached the RFC assessment without error.

### D. *Issue Two: Opinion of State Agency Medical Examiner Charles Lankford, Ph.D.*

Plaintiff claims that the ALJ failed to properly consider the opinions of State agency physician Dr. Lankford. (Pl. Br. at 13-15). He specifically argues that because Dr. Lankford determined Plaintiff suffered from moderate limitations in concentration, persistence, pace, and social functioning, the ALJ did not properly account for these limitations when he concluded that Plaintiff was capable of performing his past job as a cashier. (Pl. Br. at 13-14.)

Although ALJs are not bound by any findings made by State agency medical consultants, they

must consider such findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i) & 416.927(f)(2)(i). ALJs may not ignore these opinions and must explain the weight given to the opinions in their decisions. 20 C.F.R. § 404.1527(f)(2)(ii). Where substantial evidence supports the ALJ's decision, the failure to consider every single opinion or statement of a State agency medical consultant may constitute harmless error. *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 516-17 (S.D. Tex. 2003). Remand is appropriate only if the procedural improprieties would cast doubt on the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

The ALJ did not ignore Dr. Lankford's opinions, but rather analyzed his findings to reach Plaintiff's RFC assessment. (Tr. at 75.) In setting forth Plaintiff's RFC, the ALJ relied on Dr. Lankford's conclusions that Plaintiff could understand, remember, and carry out detailed, but not complex instructions, concentrate for extended periods, and *interact adequately* with co-workers and supervisors. *Id.* (emphasis added.) Based on this evidence, the ALJ properly concluded Plaintiff was not significantly limited in his ability to work with others and was therefore capable of performing work as a cashier. *Id.*

Although the ALJ's opinion did not expressly indicate the amount of weight given to the State medical consultant's opinions, the ALJ did not summarily reject any portion of Dr. Lankford's opinions. (Tr. at 75.) He ultimately determined Plaintiff could perform light work limited by no complex instructions, no climbing or ropes, ladders, or scaffolds, no working at heights, no work or contact with vibrating machinery, and occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 72.) This conclusion was supported by substantial evidence of record, and reflected the opinions of Dr. Lankford as well as that of Dr. Post, another

15

State agency medical consultant, who opined that Plaintiff could do "medium work." (Tr. at 74-76.) The ALJ's conclusion was also supported by testimony from two medical experts that Plaintiff did not have marked physical limitations, but would be unable to perform complex tasks. (Tr. at 23-24, 31.) Therefore, any procedural error resulting from the ALJ's failure to specify the weight given to Dr. Lankford's opinions constitutes harmless error. Accordingly, this issue does not require reversal or remand. *See Morris*, 864 F.2d at 335.

### E.     *Issue Three: Plaintiff's Past Relevant Work and Plaintiff's Physical and Mental RFC*

Plaintiff argues that the ALJ failed to conduct the required comparison between the demands of Plaintiff's relevant past work as a cashier and machine operator and his current physical and mental RFC. (Pl. Br. at 15.)

An individual's RFC is the most he can still do despite recognized limitations. 20 C.F.R. § 404.1545. The ALJ alone is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). He must make that determination based on all of the relevant evidence in the case record, including opinions submitted by acceptable medical sources. SSR 96-8p. If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no error. *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). In addition, "when making a finding that an applicant can return to his prior work, the ALJ must directly compare the applicant's [RFC] with the physical and mental demands of his previous work." 20 C.F.R. § 404.1520(e); *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994). He may not "rely on generic classifications of previous jobs" in analyzing the demands of an applicant's previous work compared to his current RFC. *Latham*, 36 F.3d at 484. However, the ALJ may find a claimant capable of performing his past relevant work if he is capable of performing such work as it is

generally performed in the national economy, even though he cannot perform certain requirements of specific past jobs. *See Leggett*, 67 F.3d at 564-65.

In this case, the ALJ's opinion states that he carefully considered the entire record when concluding Plaintiff had the RFC to perform "light work" with several physical limitations. (Tr. at 72-73.) This finding was based in part on medical opinions that Plaintiff could interact adequately with coworkers and supervisors, and had only mild difficulties in maintaining social functioning. (Tr. at 75.) The ALJ then found that based on his RFC, Plaintiff could perform his past relevant work as a cashier and machine operator.[9] (Tr. at 76.) He specifically noted VE testimony that the cashier job was sedentary with an SVP of 3, but failed to point out that some cashier jobs identified in the *DOT* require "light," rather than "sedentary" work, and "significant" contact with people. (*Id.*) This failure is not significant, however, given his earlier finding that Plaintiff could perform light work with certain limitations and his reliance on medical testimony that Plaintiff could interact adequately with co-workers and supervisors and had only mild restrictions in maintaining social functioning. Additionally, since the DOT identifies some cashier jobs as sedentary, the ALJ's reliance on testimony that the cashier job was sedentary was not improper.

Further, substantial evidence supports the comparison between Plaintiff's physical RFC and the demands of his previous relevant work as a cashier. (Tr. at 9-12, 72-76.) Medical sources determined that Plaintiff had a normal range of motion and could lift and carry 10 pounds. (Tr. at

---

[9]Plaintiff also argues that his earnings in the year 1995 as a machine operator did not rise to the level of substantial gainful activity, and since he did not perform this job at the substantial gainful activity level in the fifteen years prior to the date of the ALJ's decision, it did not constitute past relevant work. (Tr. at 16-17.) To constitute past relevant work, a claimant's work must have been performed within fifteen years prior to the ALJ's decision at the substantial gainful activity level. *See* 20 C.F.R §§ 404.1565, 416.965. Plaintiff's earnings record shows that he earned $13, 334.06 during 1994 as a machine operator job, enough to constitute substantial gainful activity for that year and within the fifteen years prior to the ALJ's decision. *See* 20 C.F.R. § 404.1574(b), Table 1.

17

74-75.) Plaintiff testified that his job as a cashier was a "sit down job" where he lifted and carried 10 pounds. (Tr. at 10.) Substantial evidence also supports the comparison between Plaintiff's mental RFC and the demands of his cashier job. Dr. Lankford and Dr. Smith concluded that Plaintiff should not perform work with complex instructions. (Tr. at 72, 75-76.) Although Dr. Lankford noted that Plaintiff had moderate difficulties in maintaining social functioning, he concluded that Plaintiff could "interact adequately" with co-workers and supervisors, and did not identify any limitations regarding Plaintiff's ability to have "significant" contact with people. (Tr. at 257.) Dr. Smith testified that Plaintiff only had mild restrictions in social functioning. (Tr. at 31.) Plaintiff himself testified that he "worked as a cashier through the window" at a gas station and did not indicate any circumstances requiring "significant" human interaction. (Tr. at 9.)

As to his finding that Plaintiff could perform his previous work as a machine operator, the ALJ again noted VE testimony that the machine operator job was sedentary with an SVP of 2. (Tr. at 76.) Plaintiff testified that his machine operator job involved work as a "film coder." (Tr. at 11.) Although not defined in the DOT, Plaintiff testified that his job as film-coder was a sit down job, where he "just pushed buttons," and lifted 10 pound bags. The demands of the job as identified by Plaintiff were consistent with the ALJ's finding that Plaintiff maintained the RFC to perform a limited range of light work and with VE testimony that the machine operator job was sedentary with an SVP of 2. While Plaintiff now claims that the VE's testimony was not based on adequate knowledge of the demands of his previous work, the VE based his testimony on Plaintiff's assertions regarding his machine operator job at the hearing, and the demands of the job as identified in the DOT and the Occupational Outlook Handbook. (Tr. at 32-33.) As discussed earlier, a determination of whether Plaintiff could perform the physical demands of his job does not require a detailed

18

analysis of a claimant's past relevant work as it was actually performed. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Instead, the determination may rest on descriptions of past work as it is generally performed in the national economy. *See id.* The DOT "reflects the exertional requirements of a job as performed in the national economy." *See id.*

Substantial evidence from the record supports the ALJ's assessment of Plaintiff's current RFC when compared with the demands of his relevant past work experience. (Tr. at 72-76.) The ALJ's opinion reflects that he appropriately considered all of the evidence in finding that Plaintiff could perform light work limited by physical restrictions and no complex tasks. *Id.* He also properly relied on the VE's and Plaintiff's testimony, as well as other evidence, to conclude that Plaintiff is capable of performing his past relevant work as a cashier and machine operator. (Tr. at 76.) For these reasons, there is no error in the ALJ's RFC assessment, and remand is not required on this issue.

### III. RECOMMENDATION

*Plaintiff's Motion for Summary Judgment* should be **DENIED**, the *Commissioner's Cross-Motion for Summary Judgment* should be **GRANTED**, and the decision of the Commissioner should be wholly **AFFIRMED**.

**SO RECOMMENDED**, on this the 27th day of July, 2010.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE